May it please the court. My name is David Wedby. I represent the plaintiff and appellant in this matter, Habib Ojama, along with my co-counsel Tim Ford. This case involves a Fourth Amendment claim centering on the City of Seattle Police Department's use of a bright line rule that allow its officers to breach a door in the context of a warrant service after waiting only eight to ten seconds from the time that they give the knock and announce to the time that they breach that door. This is a fixed policy, fixed time period that they maintain and that was implemented here. Now the purpose of the knock and announce... This isn't a facial challenge, is it? This isn't as applied. You're seeking damages in a particular case, so why is it we aren't supposed to pay attention to all the other facts in the case? The court certainly may pay attention to those facts, but if the court is disinclined to find in plaintiff's favor as a matter of law, then there certainly are genuine issues of material fact that would preclude summary judgment in favor of the defendants. As this court held in the Polk case, which Judge Smith was a part of the per curiam decision, reasonable wait times are questions that we would submit that this is exactly what should have been done here is the whole case should have been left to the jury. Not only the claims of individual liability, but also the Vanell claims where it would be submitted to the jury whether the SPD's eight to ten second policy caused the constitutional violation here. Is there any evidence to the contrary that the I surveyed the record and didn't find any. There is none, Your Honor. This is with the admission of Sergeant Matt Allen, now Lieutenant Allen, who said that he waited eight to ten seconds. It was off his timing as he's trained by the SPD. There was this discussion that there was two people in the window. However, Sergeant Allen did not feel that his entry was compromised because of those things and he simply went off his rote timing. He didn't say he didn't feel he was compromised by it. He said that he didn't and I think he said he heard the the person who observed it shouted out or call it out over the intercom. But are you aware of something called collective knowledge that where you know we're a group of six or eight police officers are acting as a as a kind of a group to carry out a function similar to what was done here. The knowledge of one is essentially the knowledge attributed to all of them so that we judge the reasonableness of what happened here by the information that was available to all of them even though the officer who actually made the seven seconds may not have been aware of every single fact. I understand that your honor. However, Sergeant Allen explicitly said that it was not off compromise so while there may be other officers who made certain perceptions Sergeant Allen who was in the position to give the breach pursuant to the SPD policy took the decision that it was not off a compromise and that is explicitly in the record. Yeah but the Supreme Court's been very clear that we judge this objectively and not subjectively and the collective knowledge doctrine that Judge Corman referred to is clearly out there. So can we properly close our eyes to the fact that there were these other events that might justify urgency even if the person who purportedly made the decision wasn't acting on them. It's not a subjective rather than objective approach you're asking us to take. I'm not asking the court to take an objective a subjective approach. Officer Allen was a person who contributed to the record that is now before the court and we're not asking the court to probe his subjective intent in terms of a racial profiling case or pretext case. What you're asking is to disregard other facts in the record known to other officers which they attempted to communicate. If Officer Allen didn't hear or didn't respond personally is that still something are we supposed to disregard those facts but the court should also not disregard what happened here and why Sergeant Allen took certain actions. So if the court is leaning in that direction essentially it's a wash that and these questions should be resolved by the jury and not by... What's the wash? There's no so far I haven't heard any disputed issue of fact. Well the wash is that there's clearly established law from this circuit and also from the 10th circuit, the 8th circuit, the 4th circuit that says if a officer implements a bright line policy that is unconstitutional and therefore... Why don't we look to whether it was a policy or not? Why don't we look to the... if what they did here was reasonable without reference to the policy why do we care about the existence of the policy? In other words the policy wouldn't have made this unconstitutional as applied and the policy was not an invariable just 8 to 10 seconds it was 8 to 10 seconds depending on certain circumstances. It wasn't you can go in after 8 to 10 seconds period was it? We would submit that it was your honor. There was evidence in the record that in 250 similar search warrant services that perhaps only once did they wait for 10 seconds. That the city has rebutted our allegation that the city in these types of circumstances namely a drug warrants circumstance ever waits beyond 10 seconds. Well whether they ever do or not I was simply asking about the wording of the policy. Is it just that it says you wait 8 to 10 seconds or do you wait 8 to 10 seconds depending on the circumstances? Are there other... there's more to this than 8 to 10 seconds. It actually doesn't say you wait 8 to 10 seconds depending on the circumstances. It says generally wait 10 seconds if not compromised and that compromise we think is a code word for exigent circumstances. So that simply says the only reasonable... Well that's what happened here. They were compromised. Except for Sergeant Allen says that he wasn't compromised. Well we've gone over we're going around in a circle now. And he still waited the 8 to 10 seconds. I mean there's not a serious deviation. Serving a drug warrant in particular a case like this when they were hitting several locations at the same time had concern of being compromised not only where they were but at other locations. So they're trying to do these things simultaneously. And in a drug warrant you're always concerned about the evidence being disposed of in the meantime. On your brief you note that well these circumstances were known in advance. You don't understand how the concern dissipates. The fact that you know in advance you've got simultaneous frays and you know in advance that the evidence might disappear. Those are still exigent circumstances. Whether you knew them in advance doesn't mean they go away. So why can't Officer Allen knowing those things in addition to what he knew observing at the scene, whether or not he heard compromised called out, why can't he know that look the clock is ticking because that evidence may be going away or somebody else might be warned while I'm standing here waiting for someone to answer the door. Well if those circumstances were in place why wouldn't the DEA have sought a no-knock warrant? I mean the knock they announced is that. I'm not sure how that helps you. The possibility of them obtaining a no-knock warrant doesn't mean that taking a warrant that gives you the right to enter after some period of time and Seattle apparently uses eight to ten seconds. How does that improve your case? I mean if they have circumstances that might justify a no-knock warrant those circumstances surely justify pretty quick entry after you knock on the door. I mean they could have sought a no-knock warrant. I don't know whether they would have gotten it but we're dealing with what we got in front of us and it says he knew that they were doing other raids at the same time and didn't want other locations to be warned and he knew that it was a drug warrant. They were concerned about evidence disappearing. Why can't those circumstances be considered? I think that they can be considered but again if they are going to be considered that should be for the trier of fact to mull over just as happened. Why? If we know those facts what's the contested issue of fact? I mean I don't know how it is to me. We have two separate issues here. Qualified immunity is one. We're not talking about that because it's hard to imagine how the individuals don't qualify for qualified immunity if we're talking about the city. And how is it the district court can't say look there's just not a genuine issue here because based on these facts a reasonable jury couldn't come to the opposite conclusion? Well I think that a jury could reach the opposite conclusion. How could it come to an opposite conclusion which was the essence of my question if there are undisputed facts? On this record there are undisputed facts. There are undisputed facts about what was known, what wasn't known, who knew what, who didn't know what. On undisputed facts it seems to me that the law can be applied. That's where I was going and that's the question you haven't answered for me yet. And that's the question in my book differentiating from other decisions I've made. It is an archetypal reasonable inquiry whether for instance... Reasonable inquiry is the question of law. I determine if it's reasonable. If in fact the facts have been put together and that's all there is, then I have to determine as a question of law is it reasonable or isn't it? If you have some facts that we're differentiating I guess I'm trying to Well, for instance, the issue with whether somebody was reasonably expected to be sleeping. That could be viewed either way. It could be viewed that it's early in the morning and people are not sleeping, therefore it should take longer for somebody to answer the door. Or it could be viewed as the district court did that somebody was up and somebody should have reached the door. Somebody was known to the group collectively that they weren't sleeping. I disagree, Your Honor, respectfully that it wasn't known. It was known that somebody came home, but in fact they had gone to bed. It was known that somebody came home, but they saw two people looking out through the window and then they stepped back. That they were up, but not when they were sleeping when the police arrived. I'm lost. Well, there's a difference between... If they were awakened by simply the police coming out of their vehicles and walking up the steps, so what? They were awakened. And it would take them a certain amount of time, longer than ten seconds, to come down the stairs once they realized what was happening. And that is a reasonableness inquiry that should be resolved by the jury. I think I have... You want to reserve the rest of your time? Please. Okay. We'll hear from the city. I think you're going too high. There we go. Okay. Good morning, Your Honors. If it please the Court, Karen Cobb for the City of Seattle and the individual Seattle defendants, along with my co-counsel, Steve Larson. And obviously I wholeheartedly agree with the Court in that there are no issues of material fact that need to be answered here. That would preclude summary judgment. And that plaintiffs have clearly indicated that they also agree that the officers are entitled to qualified immunity. So we simply get down to the issue of do we even need to talk about a policy or do we simply have to determine whether these officers' conduct was reasonable under the circumstances? And you've already indicated numerous... You can't always trust our questions. What the officers knew... Show both sides, you know. What the plaintiff would like to focus on is what the officers did not know going into the circumstance. Obviously what the Court is required to focus on is what the officers did know going into the circumstance. And they knew that they were acting on a valid warrant issued by a United at the same time in the Seattle area, in addition to others potentially across the country. They knew that the warrant required the DEA officers to search for guns, ammunition, drugs, other evidence of the drug activity, and also for cell phones. As the whole ring was known to have communicated their activities by cell phone. That was one of the main concerns that was communicated in the initial briefing and was documented in the City of Seattle's warrant plan, is that there was a good chance that even going into the circumstance, they were going to be compromised because of the ability of one member of the ring to contact somebody else to let them know that this raid was occurring. So whether or not it's correct that Sergeant Allen, who significantly is not a defendant in this matter, indicates that he did not call an additional compromise on scene here, he knew going in that they were potentially compromised. And in addition to that, in addition to knowing all of those facts. And he knew going in they were potentially compromised just because there were other locations involved? Why did he know that? That was information which under the collective officer rule, the DEA had communicated to them specifically that you're likely to be compromised going in because of the ability of these people to communicate and the simultaneous warrant services going on. Did he observe anything or was he aware of any specific facts that suggested they'd been compromised? He was aware that the unknown person had arrived on scene moments before arriving. There on scene, an unknown male who entered the residence, who of course at that point in time they knew that they didn't know who he was, that they had not been able to obviously run a criminal background check on this person, so they knew nothing about him, they didn't know whether he would be armed, had no information about this person. He also, he, although he admits that he did not hear, doesn't recall hearing the DEA agent indicate that people were looking out the window, he says he did see movement in the window above him, which indicated to him that somebody was there. And even after that and knowing everything that he knew, he still had his team knock and still waited an additional eight to ten seconds, which in hindsight may not have been a great idea for him to do. In that circumstance, they likely were compromised, there were people up in the house, and in fact, there was somebody sleeping right next to the door that clearly could have opened the door had he chosen to do so. But whether or not there is a, given the fact that all of this was reasonable under the circumstances and there was no constitutional violation, whether or not it was directed by a policy or not is a moot point. As under various, all the case law, Lujan v. Defenders of Wildlife, L.A. v. Heller, if there's not an underlying constitutional violation,  excuse me, as to the dynamic entry tactics that weren't really discussed, the officers are alleged to have used excessive force in coming in with guns drawn and handcuffing all of the occupants during the entry and securing of the residence. And it's important to note up front that these officers were only in the residence. The district court said that 12 minutes was as long as they were in the residence. Even assuming that the plaintiff's deposition testimony is correct, she says 15 to 20 minutes is the longest that the Seattle officers were in the residence. During that time, their sole- I thought 20 to 30 minutes. She says in her deposition, 15 to 20. I believe that in one of the pleadings, maybe in the complaint she said 15 to 30 or 20 to 30, but in her deposition she admitted that it was 15 to 20 minutes. So even if you took 30 minutes, at most, that these officers were in the residence. But are we really talking about some testimony in depositions? The officers pointed the guns and they were handcuffed, and Jama testified she was pushed to the ground and that they were in the residence for 20 to 30 minutes while the home was searched. That's what I say is their best case. And that is correct. Those are the allegations. And under the- And you don't think that is not, under the totality of the circumstances, excessive force? Let's take these situations separately. Let's take the handcuffing and the use of weapons when they're entering the residence. Under Michigan v. Summers and its progeny, the United States Supreme Court has clearly stated that officers executing search warrants may take reasonable action to fulfill legitimate law enforcement interests of preventing flight, minimizing risk of harm, and completion of the search without any particularized danger articulated. It's only if that, if the detention in handcuffs and the pointing of guns and so on continues on for what is determined to be an unreasonable period or is unnecessarily degrading or painful that we get into that area where what is reasonable on entry can dissolve into something that's unreasonable. It's undisputed that these officers did what they were there to do. They secured the residence. They handed it over to the DEA. So any argument regarding prolonged detention or that being in handcuffs or guns being pointed at them after the Seattle officers left has to do with the defendant who is no longer in this case and which the plaintiffs have already settled with for those alleged violations. I appreciate there are a lot of cases about the handcuffs. I've even seen some cases that were based on putting people in the middle of the room. But I'll be fair, I didn't find any cases about shoving people around to get them in the middle of the room. There's one allegation that that one officer, an officer who apparently is not a defendant in this matter, Officer Harris is the one who is alleged to have handcuffed and shoved Ms. Jama to the ground. However, it's undisputed that Officer Harris is the first person who met Ms. Jama at the top of the stairs. He proceeded to pass her from her testimony to pass her down through other officers, at which time she was then, she says, thrown to the ground and handcuffed. So her testimony varies on what is actually whether she was thrown to the ground, whether she was placed on the ground. But clearly if some unnamed officer actually did that, that officer is not in this case, so there cannot be a claim against him. And certainly that type of conduct, being thrown to the ground such that you'd think there can't be a serious argument that the City of Seattle's policy directs that or allows that. The policy that they discuss is that the officers are allowed to or actually directed to go in with guns drawn and to handcuff everybody and keep them detained until the house is secured. In terms of this aspect of the case, what did she, with respect to each individual defendant, I don't see that she testified to conduct that would make them liable. I agree with you, Your Honor. Again, the only allegation, there are no independent allegations against Lieutenant Wilski, Officer Pioli, or Officer Ness. The only individual allegation is against Officer Harris. And, again, as I explained, yes, she indicates that she testifies or in her complaint alleges that he's the one that threw her to the ground and handcuffed her. But that's disputed by her own clear testimony that he was not that person because he was the first person that she encountered at the top of the stairs and that he passed her away from himself. He moved on. She was passed down through four or five officers to the bottom of the stairs at which time that she was supposedly thrown to the ground. So if she can't make that determination now, she certainly cannot make that determination at trial, and it's not a question of fact that has any significance in this matter. And as to anything other than that incident of which she has no valid claim, the officers are clearly entitled to immunity where they were following policy under the direction of somebody who's not a defendant in this case. And there's case law that indicates that use of handcuffs and weapons during a short period of time until the house is secure is appropriate under the law. Michigan v. Summers, L.A. County v. Rattell, Mueller v. Mena, all of those cases are similar type cases where people who were not even suspects in the particular warrant service were held at gunpoint and handcuffed for a short period of time during which the court had found, without exception, that that's reasonable unless it's a prolonged period again, which is a story for another defendant on another day. As to the knock and announce requirement, if we're going to talk about whether or not 8 to 10 seconds is reasonable, it appears from the totality of the circumstances that there's no question that the timing of this entry was reasonable. But the plaintiff would like us to focus on one aspect, whether or not there was reason to believe that there were guns in the residence or that the officers were in danger. The United States Supreme Court has made clear in Banks v. Banks and U.S.P. Peterson that that's only one of the factors. The officers need only provide reasonable suspicion that the knock and announce would be dangerous, futile, or inhibit effective investigation, such as allowing destruction of evidence or other things that may inhibit the effective investigation of the crime. And the Richards v. Wisconsin case indicates that that reasonable suspicion, as it is throughout Fourth Amendment law, is low. The officers only need to show from their perspective that it was reasonable. United States v. Ramirez is the case that makes clear that this whole analysis of what qualifies as exigent circumstances must be from the perspective of a reasonable officer on the scene at the time and that the totality of circumstances must be considered, not just any one factor. We've discussed the laundry list of things that these officers knew going in, that they either personally knew or that they were given from the DEA, the agents who have a lot more experience in caught investigations, and they determined from their perspective that it was appropriate. Really telling as to how the United States Supreme Court is looking at these type of exigency issues is a recent ruling in the Kentucky v. King case. In that case, officers were chasing a person known to have just made a drug buy. They actually followed him to his house. They did not have a warrant for his arrest or to search the residence. The person got inside the house before they were able to contact him. As the officers arrived at the door, they heard inside what they believed to be somebody potentially destroying evidence. They broke into the house without a knock and announce, again, without a warrant of any kind, and the United States Supreme Court said that that was reasonable under the totality of the circumstances informing the officers that the evidence might be destroyed. That's just one of the factors that we have going on in this particular case, and it certainly would seem inequitable to take this circumstance with these officers under this huge totality of circumstances, unlike any of the other case law that we've seen, and find that they, that 8 to 10 seconds in their circumstance, could not be found to be reasonable. As to any argument that ‑‑ I just want to ‑‑ By the way, is there a pendant state law claim against the City of Seattle, or is it just ‑‑ There is not. Only a Monell claim. I just want to point out real quickly in my last moments here that plaintiff indicates that she is not required to identify a policymaker for her custom and practice claim, and we dispute that, and also that she's not required to identify any deliberate indifference, and we think that the Jet v. Dallas Independent School District case completely blows that theory out of the water, that she is not required to identify a policymaker. I believe my time is up. It is. Thank you. We'll have rebuttal. Your Honors, this case involves a large issue and a small issue. The large issue is that the United States Supreme Court has repeatedly said that the police must knock and give a person a chance to open a door. The police in Seattle don't do that. It's a matter of policy. They never do it. They didn't do it here. They don't want to do it. Well, that's not really the issue. The issue is whether, in this particular case, waiting eight to ten seconds was reasonable, and the fact that they have a policy is entirely separate. To my mind, this is an entirely separate question. If that's where the court wants to go, it allows what happened here is that after the fact, they're lawyers and lawyers. Well, this is the case you've got. You've brought a damages action. You've got to establish a basis for damages in this action. You can talk all you want about the policy, but that doesn't do it. Well, we also brought an injunction action, and we said that this is a facially unconstitutional policy, and it's what they do all the time, and they need to be enjoined on the knock and announce issue. But if you want to look at the collective knowledge, look at what happened here. I think that the law does say that in a 1983 case, reasonableness is for the jury. It's a mixed question of law and fact. Well, it's a mixed question of law and fact in this sense, that the trier of fact determines the facts. And once you determine the facts, it becomes a question of law whether the police conduct was reasonable. And that's really where there's no issue of fact, then it becomes a question of law as to whether they acted reasonably or not. And then the facts, though, are not just, you know, moanings or things that are units. They have flavor. Did that person in the window look suspicious? Did they look dangerous? Did they look like they were trying to come to the door? That's not the question. The question is that the fact that there were people at the window suggests that the people in the room were already aware that the police were there. Well, is awareness enough to ignore the knock and not allow the person to have a chance? If 10 seconds is reasonable to make under those circumstances to believe a person could have come to the door if they wanted to. I happen to think that, you know, with the 10 or 15 seconds, basically they're coming in. The police are coming in. And they have a warrant. And they've knocked and announced. And they've given, let's say, 8 to 10 seconds. And then there are all the surrounding circumstances. So they didn't have a chance to open the door, which they would have been required to do, otherwise the police would have busted in. So, I mean, I think when you consider, you know, what the consequence of all of this is, it makes it even more reasonable. May I answer, Your Honor? I've kind of run out of time on that one. I think that if you're going to consider collective knowledge, if you're going to transplant that idea from criminal law, then I think you have to say. This is criminal law. Go ahead. It is civil law. It's a civil case. And it has been. I mean, we're not making it up. It's Ninth Circuit authority aside from authority the rest of the country. It says that 8 to 10 seconds is almost never enough. No, that says that the knowledge of one of a group could be attributed to all of them. And determining whether the joint conduct was reasonable. Then we should also consider that this warrant was being served because a man who was a taxi driver had picked up a FedEx package three weeks before that was believed to contain a volume of leafy vegetable material that could not be flushed down a toilet in any reasonable period of time. And that was the only reason they were going to this apartment. In those circumstances is the fact somebody looked out the window enough to suspend the Constitution and stuff the door like they do every single time and come in with machine guns and come in with violence and throw people downstairs as a group as they do in every case. That's what they do in every case. That's what we're prepared to prove. We don't think it was reasonable here and we don't think it is reasonable as a policy. Thank you. Thank all counsel for the argument. The case just argued is submitted.
judges: Clifton, Nr Smith, Cjj Korman (Edny), Dj